Citation Nr: 1452672 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 12-35 107 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Entitlement to an initial disability rating in excess of 70 percent for posttraumatic stress disorder (PTSD).

3. Entitlement to a total disability rating based on unemployability due to service-connected disability (TDIU).


REPRESENTATION

Appellant represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

C. Fleming, Counsel

INTRODUCTION

The Veteran had active military service from February 1954 to January 1980.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas, in which the RO denied the Veteran's claim of service connection for bilateral hearing loss and granted service connection for PTSD, assigning an initial 30 percent disability rating. The Board remanded the case for further evidentiary development and adjudication in June 2014. In that remand the Board instructed the agency of original jurisdiction (AOJ) to request that the Veteran provide information concerning outstanding private records, obtain an additional VA psychiatric examination, and then re-adjudicate the claims. The AOJ sent the Veteran a letter in June 2014 in which it requested the identified information from the Veteran, who did not respond to the request. The AOJ obtained an additional VA examination in July 2014 and provided the Veteran a rating decision and supplemental statement of the case in October 2014, in which the AOJ granted the Veteran an increased initial rating of 70 percent for his service-connected PTSD but otherwise denied the Veteran's claims. Thus, there has been compliance with the Board's remand instructions. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (noting that where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance).

As the appeal of the Veteran's claim for a higher initial rating for his service-connected PTSD emanates from his disagreement with the initial rating assigned, the Board has characterized the claim as one for a higher initial rating, in accordance with Fenderson v. West, 12 Vet. App. 119, 126 (1999). 

The Board further notes that the evidence suggests that the Veteran is unable to work due to his service-connected PTSD. The United States Court of Appeals for Veterans Claims (Court) has held that a request for a TDIU, whether expressly raised by the Veteran or reasonably raised by the record, is not a separate "claim" for benefits, but rather is part of a claim for increased compensation. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). In other words, if the claimant or the evidence of record reasonably raises the question of whether the Veteran is unemployable due to a disability for which an increased rating is sought, then part of the increased rating claim is the issue of whether a TDIU is warranted as a result of that disability. Id. As such, the Board will address that question as part of the claim on appeal.

This appeal was processed using the Veterans Benefits Management System (VBMS) and Virtual VA paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. The Veteran has not been shown to have hearing loss for VA purposes.

2. The Veteran's service-connected PTSD has been manifested by occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood. Total occupational and social impairment has not been shown.

3. The Veteran's service-connected disabilities are as likely as not of such nature and severity as to prevent him from securing or following substantially gainful employment.


CONCLUSIONS OF LAW

1. The criteria for an award of service connection for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309, 3.385 (2014).

2. The criteria for an initial disability rating in excess of 70 percent for PTSD have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.159, 4.3, 4.7, 4.130, Diagnostic Code 9411 (2014).

3. The criteria for an award of TDIU have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.3, 4.15, 4.16 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

At the outset, the Board notes the enactment of the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (2000), in November 2000. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, and 5107 (West 2002 & Supp. 2014). To implement the provisions of the law, VA promulgated regulations codified at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). The VCAA and its implementing regulations include, upon the submission of a substantially complete application for benefits, an enhanced duty on the part of VA to notify a claimant of the information and evidence needed to substantiate a claim, as well as the duty to notify the claimant of what evidence will be obtained by whom. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). In addition, they define the obligation of VA with respect to its duty to assist a claimant in obtaining evidence. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c).

Here, the Board finds that all notification and development action needed to render a decision on the claims on appeal has been accomplished.

In this respect, through October 2009 and March 2012 notice letters, the RO notified the Veteran of the legal criteria governing his claims and the evidence needed to support them. Thereafter, he was afforded the opportunity to respond. Hence, the Board finds that the Veteran has received notice of the information and evidence needed to substantiate his claims and has been afforded ample opportunity to submit such information and evidence.

The Board also finds that the October 2009 and March 2012 notice letters satisfy the statutory and regulatory requirement that VA notify a claimant what evidence, if any, will be obtained by the claimant and which evidence, if any, will be retrieved by VA. See Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002) (addressing the duties imposed by 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b)). In the letters, the RO notified the Veteran that VA was required to make reasonable efforts to obtain medical records, employment records, or records from other Federal agencies. It also requested that the Veteran identify any medical providers from whom he wanted the RO to obtain and consider evidence.

Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. See Pelegrini v. Principi, 18 Vet. App. 112, 121 (2004). See also Notice and Assistance Requirements and Technical Correction, 73 Fed. Reg. 23,353 (Apr. 30, 2008) (codified at 38 C.F.R. § 3.159) (removing the prior requirement that VA specifically ask the claimant to provide any pertinent evidence in his possession). These requirements were met by the aforementioned October 2009 and March 2012 notice letters. The Veteran was further provided notice concerning the criteria for assigning disability ratings or effective dates pursuant to Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), aff'd, Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007) via the October 2009 and March 2012 letters. These questions are thus not now before the Board. The Board thus finds that "the appellant [was] provided the content-complying notice to which he [was] entitled." Pelegrini, 18 Vet. App. at 122. 

The Board notes that VCAA notice is not required with respect to every aspect of a claim raised by a claimant. If, for example, a Veteran files a claim of service connection for a disability, the claim is granted, and he files an appeal with respect to the rating assigned and/or effective date of the award, VA is not required to provide a new VCAA notice with respect to the matter of his entitlement to a higher rating and/or an earlier effective date. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), aff'd, Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007) (holding that when a claim for service connection has been proven, the purpose of § 5103(a) has been satisfied, and notice under its provisions has been satisfied). The Board notes that after an appellant has filed a notice of disagreement as to the initial effective date or disability rating assigned-thereby initiating the appellate process-different, and in many respects, more detailed notice obligations arise, the requirements of which are set forth in 38 U.S.C.A. §§ 7105(d) and 5103A. Id. Here, the Veteran's claim for a higher initial rating falls squarely within this pattern. Thus, no additional VCAA notice was required with respect to the PTSD claim on appeal. Nothing about the evidence or any response to the RO's notification suggests that the case must be re-adjudicated ab initio to satisfy the notice requirements of the VCAA.

The Board also points out that there is no indication that any additional action is needed to comply with the duty to assist in connection with the claims on appeal. The Veteran's service treatment records have been associated with the claims file, as have records of private and VA treatment he has received since service. Additionally, the Veteran was afforded VA examinations in April 2010, July 2010, June 2012, and July 2014; reports of these examinations are of record. When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). As noted below, the Board finds that the examinations obtained in this case are collectively adequate, as they are predicated on consideration of the medical records in the Veteran's claims file, as well as specific examination findings and the Veteran's own contentions. The examiners considered the Veteran's statements and provided explanations for the findings made, relying on and citing to the records reviewed. 

Under these circumstances, the Board finds that VA has complied with all duties to notify and assist required under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159. 




II. Analysis

A. Claim of Service Connection

Service connection may be granted for disability resulting from disease or injury incurred or aggravated during active service. 38 U.S.C.A. § 1110 (West 2002); 38 C.F.R. § 3.303 (2014). Service connection may also be granted for any injury or disease diagnosed after service, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d). Generally, service connection requires: (1) medical evidence of a current disability; (2) medical evidence, or in certain circumstances lay testimony, of in-service incurrence or aggravation of an injury or disease; and (3) medical evidence of a nexus between the current disability and the in-service disease or injury. See Hickson v. West, 12 Vet. App. 247 (1999). Further, it is not enough that an injury or disease occurred in service; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b).

In addition, certain chronic diseases, including organic diseases of the nervous system such as sensorineural hearing loss, may be presumed to have been incurred during service if they become manifest to a degree of 10 percent or more within one year of leaving qualifying military service. 38 C.F.R. §§ 3.307(a)(3); 3.309(a) (2014).

For the purposes of applying the laws administered by VA, impaired hearing is considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, and 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of those frequencies are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385 (2014). The Court, in Hensley v. Brown, 5 Vet. App. 155 (1993), indicated that 38 C.F.R. § 3.385 does not preclude service connection for a current hearing disability where hearing was within normal limits on audiometric testing at separation from service if there is sufficient evidence to demonstrate a medical relationship between the Veteran's in-service exposure to loud noise and his current disability. The Board notes that the Court's directives in Hensley are consistent with 38 C.F.R. § 3.303(d).

The Veteran asserts that he has bilateral hearing loss that is related to his time in service. In particular, he has contended that he has hearing loss related to in-service acoustic trauma and that service connection for hearing loss is thus warranted.

Upon review of the evidence of record, the Board finds that the preponderance of the evidence is against this claim. In that connection, the Board notes first that the service treatment records are silent as to any complaints or diagnoses of any auditory problems, and no such diagnoses were made in the August 1979 report of medical examination conducted in connection with his separation from service. Similarly, post-service treatment records are entirely silent as to any complaints or diagnosis of hearing loss. The Veteran has submitted a single document in support of his claim-a letter from a private audiologist dated in July 2010. In the letter, however, the audiologist opines only as to the possibility of an etiological link between the Veteran's tinnitus and service; the only reference to hearing loss is the audiologist's statement that the Veteran believes he has hearing loss that began in service. No independent diagnosis of hearing loss is assigned. Similarly, the Veteran underwent VA audiological examination in July 2010, at which time an audiogram was conducted, and no hearing loss for VA compensation purposes was found in either ear at any frequency. 

In this case, the evidence fails to establish a diagnosed hearing loss disorder at any point during the appeal period. Here, considering that there is no mention of hearing loss either in the service treatment records or in any of the Veteran's post-service treatment records, either in the way of a subjective complaint or objective clinical finding, the Board finds that the Veteran has not demonstrated a currently diagnosed hearing loss. See Watson v. Brown, 4 Vet. App. 309, 314 (1993) (holding that a "determination of service connection requires a finding of the existence of a current disability and a determination of a relationship between that disability and an injury or disease incurred in service."). With no persuasive medical evidence of a diagnosed disability, the analysis ends, and service connection for hearing loss must be denied. In so finding, the Board notes that, although a layman is not competent to establish the presence of disability within the meaning of 38 C.F.R. § 3.385, a layman is competent to report a decreased ability to hear sound. Layno v. Brown, 6 Vet. App. 465, 469 (1994). However, the Board finds the Veteran's normal hearing at separation and the lack of any current hearing loss disability more probative evidence as to the state of the Veteran's ears. The Board thus finds that the Veteran's assertion of hearing loss due to in-service noise exposure is not persuasive. Absent a currently diagnosed disability, service connection for hearing loss is not warranted. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

B. Claim for Increase

Disability evaluations are determined by comparing a Veteran's symptoms with criteria set forth in VA's Schedule for Rating Disabilities, which are based on average impairment in earning capacity. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. Part 4 (2014). When a question arises as to which of two ratings applies under a particular diagnostic code, the higher of the two evaluations is assigned if the disability more closely approximates the criteria for the higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2014). After consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2014).

The Veteran's entire history is reviewed when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, where, as here, the question for consideration is the propriety of the initial evaluation assigned, evaluation of the medical evidence since the grant of service connection and consideration of the appropriateness of a "staged rating" (assignment of different ratings for distinct periods of time, based on the facts found) is required. See Fenderson, 12 Vet. App. at 126.

The Veteran's PTSD is rated as 70 percent disabling under the General Rating Formula For Mental Disorders set forth in 38 C.F.R. § 4.130, Diagnostic Code 9411, which evaluates impairment from PTSD. Pursuant to this diagnostic code, a 70 percent evaluation is warranted where there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id.

A 100 percent evaluation is assignable where there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id. 

Also of relevance, Global Assessment of Functioning (GAF) scores are a scale reflecting the "psychological, social and occupational functioning on a hypothetical continuum of mental health- illness." See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); see also Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing the American Psychiatric Association's Diagnostic and Statistical Manual for Mental Disorders, Fourth Edition (DSM IV), page 32). A GAF score of 51 to 60 indicates the examiner's assessment of moderate symptoms (e.g., a flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). A GAF score of 61 to 70 denotes mild symptoms (e.g. depressed and mild insomnia) or some difficulty in social and occupational functioning but generally functioning pretty well, with some meaningful interpersonal relationships. Id. A GAF score of 71 to 80 denotes transient symptoms and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument) with no more than slight impairment in social and occupational functioning.

While the Rating Schedule does indicate that the rating agency must be familiar with the DSM IV, it does not assign disability percentages based solely on GAF scores. See 38 C.F.R. § 4.130. Rather, GAF scores are but one factor to be considered in conjunction with all the other evidence of record.

Consideration is given to the frequency, severity, and duration of psychiatric symptoms, the length of remission, and the Veteran's capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment, rather than solely on the examiner's assessment of the level of disability at the moment of the examination. See 38 C.F.R. § 4.126(a). Furthermore, when evaluating the level of disability arising from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 38 C.F.R. § 4.126(b). It is necessary to evaluate a disability from the point of view of the Veteran working or seeking work. 38 C.F.R. § 4.2 (2014).

Relevant medical evidence of record consists of VA examinations provided to the Veteran in April 2010, June 2012, and July 2014, as well as records of ongoing treatment with VA treatment providers and statements submitted by the Veteran. 

The April 2010 VA examination report reflects that the Veteran complained of experiencing panic attacks, irritability, and depression, as well as trouble with sleep and concentration. He reported that he would isolate himself from others and left work in 1996, although he denied any suicidal or homicidal ideation. The examiner noted the Veteran's reports of recurrent recollections and distressing dreams, as well as feelings of re-experiencing and avoidance of news of war. The Veteran further reported feeling detached and estranged from others and stated that he had diminished interest in activities. The examiner noted a restricted affect but found orientation, hygiene, communication, and thought all to be normal. The Veteran was noted to have difficulty following complex commands and to experience panic attacks three to four times per year. No hallucinations or delusions were observed. The examiner diagnosed the Veteran with PTSD and assigned a Global Assessment of Functioning (GAF) score of 70. She found the Veteran's PTSD symptoms to cause mild or transient symptoms that caused occupational and social impairment with decrease in work efficiency and occupation tasks only during periods of significant stress. 

In June 2012, the examiner assigned diagnoses of both PTSD and vascular dementia, with a GAF score of 40 reflecting the level of symptomatology of both disorders combined. The examiner noted that the Veteran's dementia caused cognitive impairments that required "assistance and supervision for many areas of daily living." In discussing the interplay between the two diagnoses, the examiner initially stated that it was possible to differentiate symptoms of PTSD from those of vascular dementia, and appeared to attribute all cognitive symptoms to the dementia. However, the examiner also stated that due to the dementia, the Veteran's "PTSD symptoms may be more difficult to manage and appear worse." The examiner further found the Veteran to display occupational and social impairment with deficiencies in most areas and stated that it was not possible to differentiate what portion of the impairment was attributable to his various disorders, stating that "any occupational/social impairment will likely be made worse by dementia." Regarding the Veteran's symptomatology, the examiner noted that the Veteran was withdrawn and did not participate in outside social activities but maintained a good relationship with his wife, children, and grandchildren. He was noted to display anxiety and panic attacks less than once per month, as well as impairment with sleep, memory, judgment, and thought. The Veteran also displayed disturbance in motivation and mood and an inability to establish and maintain effective relationships, but no suicidal or homicidal ideation, delusions, or hallucinations were noted. He was noted to intermittently display an inability to perform activities of daily living. 

The report of the July 2014 VA examination reflects diagnoses of both PTSD and an unspecified major neurocognitive disorder. In discussing the interplay between the two diagnoses, the examiner initially stated that it was possible to differentiate symptoms of PTSD from those of the neurocognitive disorder, attributing all cognitive symptoms to that disability. However, the examiner also stated that the Veteran's concentration symptoms and mood and anxiety symptoms are "likely attributable to both." The examiner further found the Veteran to display occupational and social impairment with deficiencies in most areas and stated that it was not possible to differentiate what portion of the impairment was attributable to his various disorders, pointing to "symptom overlap" and stating that "each would likely cause significant impairment independently." Regarding the Veteran's symptomatology, the examiner noted that he was withdrawn and did not participate in outside social activities but maintained a good relationship with his wife, children, and grandchildren. The examiner noted that the Veteran's neurocognitive disorder had caused him to be less conversational. He displayed apathy, depression, and irritability, as well as problems with sleep. The examiner noted anxiety and panic attacks less than once per month, as well as impairment with memory, judgment, and thought. The Veteran also displayed disturbance in motivation and mood and difficulty with establishing and maintaining effective relationships, but no suicidal or homicidal ideation, delusions, or hallucinations were noted. He was noted to intermittently display an inability to perform activities of daily living as well as some disorientation to time or place. The examiner reiterated that the symptoms of the Veteran's two disorders cannot be differentiated in finding that the Veteran displayed "significant impairment." 

Post-service treatment records reflect similar findings, including records from 2011 and 2012 documenting the Veteran's complaints of ongoing memory problems as well as anxiety, depression, decreased energy, and trouble sleeping. At each of these visits, although the Veteran complained of ongoing irritability and decreased interest, he was noted to have fair to good judgment, thinking, and insight, and he denied suicidal and homicidal ideation. The Veteran was assigned a GAF of 48 in June 2011, and on multiple occasions in 2011 and 2012 he had GAF scores ranging from 52 to 59. More recent treatment records from 2013 and 2014 document ongoing complaints of anxiety and irritability, as well as sleep problems and disinterest in activities. He was noted in September 2013 to be able to conduct activities of daily living, although it took him extra time. He was noted at that time, as well as at later treatment records in 2013, to be friendly and pleasant, with a euthymic mood. He was well-groomed at his visits; however, he displayed some irritability, particularly when his wife asked him to bathe more frequently than he wished. An October 2013 treatment provider noted him to be unemployable, stating that the Veteran's "cognitive impairment and apathy due to dementia play a major role in his declining function." However, treatment records from 2014 reflect that the Veteran reported being "content," with decreased irritability and euthymic mood, although he continued to need cues for bathing and shaving, which he did only once to twice per week, and to sleep twelve to fourteen hours per day. 

Upon review of the evidence, the Board finds that an initial rating in excess of 70 percent for the Veteran's service-connected PTSD is not warranted at any time during the pendency of this claim. Pertinent medical evidence of record shows that the Veteran's PTSD has caused some occupational and social impairment, with deficiencies in most areas, due to such symptoms as impaired judgment, thinking, and mood, as well as some impairment with hygiene and an inability to establish and maintain effective relationships. The Veteran has also complained of depression, anxiety, and panic attacks. However, total occupational and social impairment as a result of the Veteran's service-connected PTSD has not been shown. Importantly, throughout this appeal, the evidence has shown that the Veteran had strong relationships with his family, including his children and grandchildren, and with his wife of more than fifty years.

In reaching this conclusion, the Board points out that the evidence has not shown total occupational and social impairment due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting oneself or others; memory loss for names of close relatives, own occupation, or own name. In this regard, the Board notes that, on every occasion on which he was asked, the Veteran has denied experiencing suicidal ideation. He has not been noted to experience delusions or hallucinations, grossly inappropriate behavior, or memory loss for his own or relatives' names at any point during the appeal period. Although he has been noted to experience some problems with judgment, insight, and thought, these problems have not been identified as rising to the level of gross impairment to warrant a 100 percent rating. Similarly, although the Board acknowledges that the Veteran receives help around the house from his wife and family members, he has never been found to have difficulty remembering facts such as the names of his relatives or himself. Further, although he has admitted to anger and ongoing irritability, he has never been found to have homicidal ideation or to be in any way in persistent danger of hurting himself or others.

The Board acknowledges that the Veteran is currently unemployed and that his VA treatment providers have suggested that this inability to work is secondary to his service-connected PTSD. However, as discussed above, the Veteran has at no time displayed any symptoms akin to those outlined by the General Rating Formula For Mental Disorders that warrant a 100 percent disability rating; his disability picture does not otherwise reflect total impairment such as to warrant a 100 percent evaluation. Indeed, the Veteran has been shown to have strong relationships with his family. Therefore, total social impairment has not been shown. Compellingly, the Board notes that none of the Veteran's VA examiners have found him to display total occupational and social impairment due to his service-connected PTSD, even when the symptoms of his non-service-connected neurocognitive disorder are considered as well. See Mittleider v. West, 11 Vet. App. 181 (1998). The Board thus concludes that, in this case, the symptoms shown in the VA treatment records and VA examinations do not equate to the symptoms contemplated by a 100 percent rating.

In its analysis, the Board has considered the GAF scores ranging from 40 to 70 assigned to the Veteran during the course of his VA treatment and the VA examinations provided to him in April 2010 and June 2012. Again, the GAF scores assigned in a case, like an examiner's assessment of the severity of a condition, are not dispositive of the evaluation issue; rather, they must be considered in light of the actual symptoms of a veteran's disorder (which provide the primary basis for the rating assigned). See 38 C.F.R. § 4.126(a).

In this case, the Board finds that the Veteran's GAF scores of 52 to 59, assigned by his VA treatment providers, align more closely with his stated symptoms and with the rating of 70 percent currently assigned for his service-connected PTSD. In so finding, the Board notes that the Veteran has not at any time displayed suicidal ideation or severe obsessional rituals, nor has he been noted to engage in activities such as shoplifting. In addition, there has been no indication in the record to suggest that the Veteran has illogical, obscure, or irrelevant speech, or that he avoids his friends or neglects his family. To the contrary, although the Veteran has been noted to have difficulty maintaining social relationships, he has had some degree of success; he continues to have a good relationship with his wife of more than fifty years, as well as with his children and grandchildren. The Board finds that these findings are indicative of the symptoms described by the Veteran and are properly compensated by the 70 percent disability rating currently assigned. 

Nothing about the Veteran's assigned GAF scores, when considered in light of the other evidence of record as described above-in particular the Veteran's level of social impairment-leads the Board to conclude that a rating higher than the 70 percent initially assigned is warranted. In so finding, the Board reiterates that the Veteran's assigned GAF scores are not dispositive of the evaluation and must be considered in light of the actual symptoms of his disorder. In this case, the Board has found that the Veteran's symptomatology, as discussed above, is appropriately compensated by the 70 percent disability rating initially assigned. 

The above determinations are based on consideration of the applicable provisions of VA's rating schedule. The Board also finds that at no time has the disorder under consideration been shown to be so exceptional or unusual as to warrant the assignment of any higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1). Here, there is an absence of evidence of marked interference with employment (i.e., beyond that contemplated in the assigned evaluation), frequent periods of hospitalization, or evidence that the Veteran's service-connected PTSD has otherwise rendered impractical the application of the regular schedular standards. Thus, the criteria for invoking the procedures set forth in 38 C.F.R. § 3.321(b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337, 338-9 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

Furthermore, it bears emphasis that the schedule is intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 38 U.S.C.A. § 1155. Generally, the degrees of disability specified in the rating schedule are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1 (2014). Thus, based on the record before it, the Board does not find that the medical evidence demonstrates any unusual disability with respect to the claim that is not contemplated by the rating schedule. The very symptoms the Veteran experiences are specifically contemplated by the rating schedule. Thun v. Peake, 22 Vet. App. 111 (2008). As a result, the Board concludes that a remand for referral of the rating issues to the VA Central Office for consideration of extra-schedular evaluation is not warranted.

The Board notes that under Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014), a claimant may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to address all the service-connected symptoms. However, in this case, there is no indication that service-connected symptoms have not been attributed to specific service-connected disabilities, and the Board finds no additional symptoms related to the combination of the Veteran's service-connected disabilities. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

For all the foregoing reasons, the Board finds that the Veteran's service-connected PTSD does not warrant an initial disability rating in excess of the 70 percent initially assigned. 38 C.F.R. §§ 4.3, 4.7, 4.22, 4.130, Diagnostic Code 9411 (2014). This is so for the entirety of the claim period. The preponderance of the evidence is against the claim for a higher initial rating. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).




C. Claim for a TDIU

A total disability rating for compensation based upon individual unemployability may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disability. See 38 C.F.R. §§ 3.340, 3.341, 4.15, 4.16 (2014). This is so provided the unemployability is the result of a single service-connected disability ratable at 60 percent or more, or the result of two or more service-connected disabilities, where at least one disability is ratable at 40 percent or more and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a).

Here, the Veteran has been awarded service connection for PTSD, currently rated as 70 percent disabling; diabetes mellitus, currently rated as 20 percent disabling; tinnitus, rated as 10 percent disabling; and erectile dysfunction, rated as noncompensably disabling. The Veteran's combined disability rating is 80 percent. As will be explained below, the record raises the question of TDIU with respect to the rating issue on appeal before the Board.

Given the 70 percent rating for PTSD, as well as his overall rating of 80 percent, the Veteran meets the criteria for consideration for entitlement to TDIU on a schedular basis because the ratings satisfy the percentage requirements of 38 C.F.R. § 4.16(a). Even so, it must be found that the Veteran is unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities.

Consequently, the Board must determine whether the Veteran's service-connected disabilities preclude him from engaging in substantially gainful employment (work that is more than marginal, which permits the individual to earn a "living wage"). Moore v. Derwinski, 1 Vet. App. 356 (1991). The fact that a Veteran may be unemployed or has difficulty obtaining employment is not determinative. The ultimate question is whether the Veteran, because of service-connected disability, is incapable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). An inability to work due to advancing age may not be considered. 38 C.F.R. §§ 3.341(a), 4.19 (2014). In making its determination, VA considers such factors as the extent of the service-connected disability, and employment and educational background. See 38 C.F.R. §§ 3.340, 3.341, 4.16(b), 4.19. 

The Board notes that the record reasonably raises the question of whether the Veteran is unemployable due to his service-connected disabilities. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). In that connection, the Board looks to the Veteran's statement to VA examiners that he stopped working due to PTSD symptoms, as well as a statement from a VA treatment provider in October 2013 to the effect that the Veteran is unable to work due to his psychiatric disabilities. Information concerning the Veteran's employment history indicates that he was employed as a salesman until he retired in 1994. He stated that he had to take an early retirement from her work because he was unable to continue due to feeling stressed and overwhelmed from his PTSD symptoms. 

The Board acknowledges that there are conflicting opinions of record as to the effect of the Veteran's service-connected disabilities-in particular, his PTSD-on his ability to maintain employment. In that connection, the Board first acknowledges that the VA examiners in June 2012 and July 2014 opined that the Veteran's PTSD, when considered with his neurocognitive disorder, caused "significant impairment" on his social and occupational functioning, but neither examiner explicitly found him to be unemployable due to his service-connected PTSD. However, the June 2012 VA examiner noted that the Veteran required "assistance and supervision for many areas of daily living." Similarly, the July 2014 VA examiner noted that the Veteran's wife handled many of the Veteran's instrumental activities of daily living, including managing the finances, dispensing the Veteran's medications, and encouraging him to bathe. Both the June 2012 and July 2014 VA examiners stated that they were unable to differentiate symptoms of the Veteran's PTSD from his neurocognitive disorder. See Mittleider v. West, 11 Vet. App. 181 (1998). In addition, the Veteran stated to VA on multiple occasions, including at a May 2012 hearing before a decision review officer, that he was unable to work due to his PTSD.

After having reviewed the record and weighing the evidence both in support of and against the claim, the Board finds that the evidence is in relative equipoise as to whether the Veteran's service-connected disabilities combine to render him unemployable. In this regard, the Board acknowledges that VA examiners have found the Veteran's PTSD to have "significant impairment" on his occupational functioning, without specifically finding him unable to engage in gainful employment. However, the Board finds compelling the findings of the October 2013 VA treatment provider who stated that the Veteran's "cognitive impairment and apathy due to dementia play a major role in his declining function ... he is not employable at this time." As noted above, the VA examiners in June 2012 and July 2014 both stated that the Veteran's PTSD symptoms cannot be meaningfully differentiated from symptoms of his neurocognitive disorder or dementia. See Mittleider v. West, 11 Vet. App. 181 (1998). Thus, as there is probative evidence both for and against the claim in this case, the Board finds the evidence to be in equipoise with respect to whether the service-connected disabilities at issue preclude him from obtaining and retaining substantially gainful employment. When reasonable doubt is resolved in the Veteran's favor, the Board finds that the Veteran's service-connected PTSD is as likely as not of such nature and severity as to prevent him from securing or following substantially gainful employment. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3 (2013); Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). Therefore, entitlement to a TDIU is warranted.













ORDER

Entitlement to service connection for bilateral hearing loss is denied.

Entitlement to an initial rating in excess of 70 percent for posttraumatic stress disorder is denied.

Entitlement to a total disability rating based on unemployability due to service-connected disability (TDIU) is granted.



____________________________________________
ERIC S. LEBOFF
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs